## Starks v. Grand Lodge Brotherhood of Railroad Trainmen.

(Decided May 10, 1935.)

214

M. E. GILBERT for appellant.

W. A. BERRY for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The appellant became a member of a subordinate lodge of appellee some time in 1928, at a time when he was employed as a conductor on the Illinois Central Railroad. Upon his initiation, the Brotherhood issued a policy to him known as Class A, the terms and conditions of which are set out in the record before us. After he had been a member for some time, he changed his policy and became the holder of a policy identified as one in Class G. The policy is not filed with the record, but appellant files as part of his petition a blank form of Class G policy, which he alleges is a counterpart of the one issued to him.

Appellant says that in January, 1931, while in the employment of the Illinois Central Railroad Company in the capacity of conductor, in passing through a tunnel some rock or other hard substance was thrown or fell against a window glass and portions of the glass struck him in the eye, and that as a result his vision was practically destroyed, and he was thereafter unable to discharge his duties as a railroad conductor and was discharged by the railroad company because of his incapacity to perform such duties, and his petition sets out that "he has been permanently and totally disabled and incapacitated from performing his duties."

He alleges that he made claim of the Brotherhood for $5,000, which was the face of the policy, and that "same was submitted to the proper authorities and appealed from one department to another, finally to the Board of Insurance of the Order, with the result that his claim was refused." In addition to his claim that the Brotherhood refused to pay him, he alleges that he was compelled to pay his regular dues which amounted to $150, and in his petition he asks judgment for the face of his policy, plus the $150 paid as dues, a total of $5,150 with interest.

The Brotherhood answered his petition, first by a general denial of each allegation of his petition, and

pleaded specifically that appellant became a member of the Paducah local lodge of the Brotherhood on June 1, 1923, and was thereafter issued a Class A policy; that on June 28, 1928, appellant made application for, and was issued a Class G policy, whereunder it was provided that the insured was to receive benefits as provided in section 68 of the constitution of the Brotherhood.

The defendant then pleads both sections 68 and 70 of its constitution, and it does not now appear necessary to incorporate either of them here in full, since they are set out verbatim in opinions of this court in decisions hereinafter cited. Sufficient for us to say at this point that under the policy which appellant held, and which provided for payment directly under section 68 of the Brotherhood constitution, it provided only for a payment of the $5,000, to the named beneficiary in case of death of the holder, or the same sum to:

"Any beneficiary member in good standing who shall suffer * * * the complete and permanent loss of sight of one or both eyes, or upon becoming seventy [70] years of age, shall be considered permanently disabled, but not otherwise, and shall thereupon be entitled to receive upon furnishing sufficient and satisfactory proof of such total and permanent disability, the full amount of his beneficiary certificate."

Section 70 of the constitution, pleaded by the Brotherhood, provides that all claims for any disability not coming within the meaning of section 68 shall be addressed to the benevolence of the Brotherhood, and in no case shall be made the basis of any legal liability on the part of the Brotherhood. Section 70 provides the method of procedure in such cases, that is presentation of claims to the beneficiary board, which board is endowed with power to decide as to the sufficiency of proof, with an appeal to the board of insurance. It is also provided in section 70 that same may be pleaded in bar to any suit or action at law, or in equity, which may be commenced in any court to enforce the payment of any such claim, and, further, that no appeal shall be taken from the action of the board in any case, coming, of course, within the purview of section 70. The Brotherhood then asserted that appellant had never

made any claim against it for indemnity under section 68 of the Constitution, but that he had claimed under section 70 for what may be termed the gratuitous benefit, and that after taking the procedure required, the claim had been rejected by all boards or bodies to which it had been addressed.

Appellant replied by way of general denial, and in an amended reply contended that the intent of the policy which he held was "to pay all members in full where their vision was or became so impaired that by or from any cause disqualified them from performing or executing his duties," and the practice of the Brotherhood was to pay its members so injured as this plaintiff was "the full amount of the policy, and that the Brotherhood is following such policy and so advising its members."

Among other allegations of appellant's reply, he admits that he signed an agreement to abide by the rules and decisions of the Brotherhood, but claims that they were changed after he became a member, but he does not point out any change, and a careful search of all exhibits filed fails to show any such change. A rejoinder by the Brotherhood denied such allegations, and thus it seems issue was joined.

After a hearing of proof offered for plaintiff, the court, on defendant's motion, instructed the jury to find for defendant, and the only question for determination is whether or not the court therein erred. The proof showed that appellant was injured in the manner and at the time claimed, and that he had a policy with the Brotherhood, and one of the character claimed, that is a Class G policy. On the trial it was clearly developed that there was not a complete and permanent loss of the sight of one or both eyes. The plaintiff said that he could see to write; that he could see the outlines of a person at a short distance, and could tell who the person was if he came close to him. In explaining the extent of his injury, he said, "I will say that my eyes are from twenty-five to fifty per cent. worse than they were right after I got hurt." No doctor or eye specialist was introduced by plaintiff to testify as to the extent of the injury, but we find a stipulation to the effect that "if Dr. Abell were present he would say that he examined plaintiff's eyes in November 1931, and at that time his vision was impaired about fifty per cent. or less."

The record shows by exhibits and proof that appellant filed a petition for benevolent claim under sections 70 and 71 of the constitution. It is shown that this claim was filed on May 31, 1931, and was accompanied by Dr. Abell's certificate showing the degree of appellant's vision at that time, and showed "progress bad." The subordinate lodge approved appellant's petition, and on December 1, 1932, the beneficiary board of the Brotherhood disapproved the claim and it went then to the board of insurance, which considered the petition and sustained the finding of the beneficiary board and marked the petition "refused."

On the claim that the Brotherhood had construed policies similar to the one held by appellant to mean that a policyholder injured to such an extent that he is disqualified for railroad service should be paid the full amount of the policy, the plaintiff failed to offer proof of such nature as would uphold or justify this plea, if indeed it might have been proper in this case.

Appellant offered to introduce magazines, said to have been published by the Brotherhood, claiming that on certain pages thereof "it shows that the Brotherhood had paid the face value of the policy for similar injuries to his." This was rejected by the court and properly so, if avowal of appellant went no further than as made by him. A witness offered testimony to the effect that the Grand Lodge always paid claims where members were injured to such an extent that they were not permitted to work for the railroad, where they were totally disabled, and that he had a similar policy and was injured and they paid him the face of the policy. Another witness was offered who would have said, if permitted, that "he was instructed that anything that disqualified a man for railroad service, that the face of the policy was due," and that this advice came to him from the chairman of the Grand Lodge, and still another witness who was permitted to say that he held a similar policy, was not totally disabled, and the Brotherhood failed to pay him anything, though he had "understood that according to the Constitution I was totally and permanently disabled."

Most of the evidence offered, as above stated, was rejected by the court, and properly so, because it was not of sufficient force to bear out appellant's contention.

It did not (if same were permissible for that purpose) have such effect as to alter a written contract entered into between the parties. The nature and extent of the injuries were not shown in any instance; the mere statements that certain persons held similar policies, or had met with similar injuries is far from being sufficient proof to sustain custom or usage to such an extent as to overturn a written contract, nor was there attempt to show whether it was a custom to pay in such cases as were claimed, under section 68 or section 70 of the Brotherhood's constitution, if either would avail anything in cases of this character.

Without going further into an analysis of the testimony, it is sufficient to say that under the recent decisions of this court the lower court properly advised the jury to find for defendant.

In the case of Fowler v. Brotherhood of Railroad Trainmen, 253 Ky. 786, 70 S. W. (2d) 669, we had under consideration one of the Brotherhood's policies which was exactly like the one here; that is entitling the holder to benefits in accordance with section 68 of its constitution. In that case appellant's hand was injured to such an extent as to permit him to say that he was permanently and totally disabled within the meaning of his policy. The entire hand was not severed or amputated above the wrist joint, as was provided by section 68 of the constitution should constitute permanent disability for which the Brotherhood stood liable, and this court held that the parties had contracted as provided in the policy, and since the policy did not insure against loss of time, inability to earn money, or to pursue any particular occupation, the courts would hold the parties to the terms and conditions so clearly and definitely expressed. The cases cited in the opinion just referred to above are numerous, as upholding the views of this court as expressed therein, and we conclude that under them there is no escape from the conclusion that appellant could not recover, under section 68, for the partial loss of the sight of one or both eyes.

A more recent case, which appears to be conclusive as to appellant's right to recover for his injury under section 68, throws some light on to his right to recover in a law action under section 70. The case to which we refer is Brotherhood of Railway Trainmen v. Taylor, 256 Ky. 556, 76 S. W. (2d) 611.

In that case appellee had met with an injury to his eyes to such an extent that he could not distinguish colors, and was disqualified for railroad service. He held a policy for $5000, under Class G, the same as held by appellant here. Taylor seems to have proceeded as did appellant here, by making application for disability benefits under section 70 of the Brotherhood's constitution, which application was rejected, whereupon Taylor filed suit to recover the full amount of the policy under section 68. The pleadings, the facts, and the result of the injury to his eyes all seem to be quite similar to the pleadings, the facts, and injury here.

Citing and adhering to the rule laid down in the Fowler Case, supra, we said:

"Plaintiff's impaired vision, as described in his application and also in his petition, utterly failed to measure up to the stipulations and terms of his contract [section 68, supra] so as to entitle him to recover for such diminution under the provisions of that section, which is the only right attempted or could be asserted under his certificate."

It also appears that Taylor had made an application for the benefits provided by section 70 of the constitution, and his claim had been rejected, whereupon he sued as was done in the instant case, for benefits under section 68, and this being true the conclusions reached in the Taylor Case seem fully applicable here.

If by any sort of reasoning the pleadings offered by plaintiff could be construed as an attempt to set up a cause under section 70, the court was not in error in directing a verdict for defendant, as it was held in the Taylor Case supra:

"Section 70 of the constitution, which is also made a part of the certificate, contains provisions for the payment of purely charitable benefits to the holder of a certificate, proportioned to the amount of each class, in cases of disability of the holder when produced in a manner not embraced by the terms of section 68, supra; but no member contributes to that fund, and there is no contractual obligation to pay it, since it is a purely charitable gratuity, and whether or not it shall be paid is to be determined exclusively by duly constituted boards of the brotherhood."

220

With regard to appellant's claim for $150 with interest on account of premiums paid to the lodge after his accident, there is neither sufficient pleading nor proof to have authorized a submission of that question to the jury.

Judgment affirmed.